Sean P. Nalty  Bar No. 121253
sean.nalty@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:    415.442.4810
Facsimile:    415.442.4870

Attorneys for Defendants
THE CHURCH PENSION GROUP SERVICES CORPORATION
doing business as THE EPISCOPAL CHURCH MEDICAL TRUST;
CIGNA BEHAVIORAL HEALTH, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CATHERINE BLACK, | Case No. 15-CV-00853-PSG |
| Plaintiff, | **DEFENDANTS' REPLY TO PLAINTIFF'S OPPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| THE CHURCH PENSION GROUP SERVICES CORPORATION doing business as THE EPISCOPAL CHURCH MEDICAL TRUST; CIGNA BEHAVIORAL HEALTH, INC.; and DOES 1-25, inclusive, | Date:           April 21, 2015<br>Time:           10:00 a.m.<br>Location:     Courtroom 5<br><br>Complaint Filed: January 26, 2015<br>Trial Date:    None Set |
| Defendants. | Judge:         Hon. Paul S. Gerwal |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. I

II.  MS. BLACK'S FACTUAL STATEMENT ............................................................ 1

III. LEGAL ANALYSIS .............................................................................................. 2

    1.  The California Courts Have Decided that Defendants Who are Not a Party to an Insurance Policy, such as Third Party Administrators, Cannot be Sued for Tortious Bad Faith ..................... 2

    2.  The Cases Relied on by Ms. Black Apply a Factual Circumstances Test and Impose a Duty of Good Faith on Parties who are Not Parties to a Contract ........................................... 3

    3.  The Cases Relied on by Ms. Black are Contrary to California Law which Limits the Duty of Good Faith and Fair Dealing to Parties to a Contract ..................................................... 4

    4.  A Self-Funded Plan is Not Insurance Under California Law .............. 6

IV.  CONCLUSION & MS. BLACK'S REQUEST FOR LEAVE TO AMEND ............ 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38 (1997) ..... 6

*Applied Equipment Corp. v. Litton Saudi Arabia Limited*, 7 Cal. 4th 503 (1994) ..... 2

*Carma Developers (Cal.), Inc. v. Marathon Development California*, 2 Cal. 4th 342, 372 (1992) .. 5

*Cary v. United of Omaha Life Insurance Company*, 68 P.3d 462, 2003 Colo. LEXIS 331 (2003) .. 4, 5, 6

*Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28 (1999) ..... 5, 6

*Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla. 1978) ..... 3, 4

*Doctors' Co. v. Superior Court*, 49 Cal. 3d 39 (1989) ..... 2

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988) ..... 5, 6

*Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877 (9th Cir. 1999) ..... 8

*Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566 (1973) ..... 2, 3, 5

*Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317 (2000) ..... 5

*HS Servs. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642 (9th Cir. 1996) ..... 2

*Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174 (1993) ..... 6

*Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136 ..... 5

*Richardson v. Gab Business Servs.*, 161 Cal. App. 3d 519, 523 (1984) ..... 7

*Rude v. Nelson's Marine, Inc.*, 2004 U.S. Dist. LEXIS 24870 (N.D. Cal. 2004) ..... 3

*San Miguel Community Assn. v. State Farm General Ins. Co.*, 220 Cal. App. 4th 798 (2013) ......... 5

*Scott v. Pacific Gas & Electric Co.*, 11 Cal. 4th 454 (1995) ..... 5

*Truck Ins. Exchange v. Amoco Corp.*, 35 Cal. App. 4th 814 (1995) ..... 7

*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1 (1995) ..... 5

*Wathor v. Mutual Assurance Administrators, Inc.,* 2004 OK 2 (2004) ..... 4

*Wolf v. Prudential Insurance Company of America*, 50 F.3d. 793 (1995) ..... 3, 4, 5, 6

**Statutes**

California Insurance Code § 22 .................................................................................................. 6, 7

I.     **INTRODUCTION**

Plaintiff Catherine Black's ("Ms. Black") opposition to defendants The Church Pension Group Services Corporation d/b/a The Episcopal Church Medical Trust ("CPGSC") and Cigna Behavioral Health Inc.'s ("Cigna") (collectively "defendants") motion to dismiss her second claim for relief for tortious breach of the covenant of good faith and fair dealing ("tortious bad faith") is fatally flawed.  Ms. Black argues that "whether a third party administrator [such as Cigna] can be liable for tortious bad faith involves a factual inquiry into the duties and responsibilities of the administrator and depends, in part, upon the financial relationship between the insurer and the third-party administrator."  Ms. Black's Opposition ("the Opposition"), 5:18-22.

Ms. Black's argument is factually inaccurate because here there is no relationship between an insurer and a third-party administrator.  Ms. Black alleges in her complaint for damages ("the Complaint") that Cigna is a third-party administrator of a self-funded medical trust sponsored by the Episcopal Church.  The Complaint, ¶ 7 ("Plaintiff is informed and believes, and thereon alleges, that Plaintiff's health insurance coverage was funded through The Medical Trust, which sponsors and administers the Plan.  Cigna served as the third party health claims administrator.")

In addition, to adopt Ms. Black's position, this Court will have to ignore multiple California Supreme Court cases which hold that a claim for tortious bad faith arises only under an insurance policy and follow out of state cases that, contrary to California law, hold that a claim for tortious bad faith arises from factual circumstances that exist separate and apart from an insurance policy. Ms. Black's reliance on out of state cases, when California law applies to this action, only highlights the fact that since there is no insurance policy at issue, Ms. Black cannot state a claim for relief for tortious bad faith and her second claim for relief must be dismissed with prejudice.

II.    **MS. BLACK'S FACTUAL STATEMENT**

Ms. Black tries to remedy the fatal flaw of the absence of an insurance policy by stating in her opposition that "Ms. Black had group health insurance coverage as a benefit of her employment through an Empire BlueCross BlueShield PPO 80/60 Plan ("the Plan"), which is attached to the Complaint as Exhibit A." The Opposition, 2:8-10. However, Ms. Black did not sue Empire

BlueCross BlueShield PPO because Blue Cross did not provide insurance. The Plan was self-funded.

## III. LEGAL ANALYSIS

### 1. The California Courts Have Decided that Defendants Who are Not a Party to an Insurance Policy, such as Third Party Administrators, Cannot be Sued for Tortious Bad Faith

This matter is before the Court on diversity jurisdiction so California law applies to this matter. *HS Servs. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 644 (9th Cir. 1996).

Ms. Black incorrectly argues that the California courts have not decided the issue of whether a third-party administrator can be held liable for tortious bad faith. The issue was decided in 1973 by the California Supreme Court in *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566 (1973). There, the defendant insurers hired defendant P. E. Brown and Company ("Brown") to investigate a fire loss. Carl Busching ("Busching"), a claims adjuster employed by Brown, undertook the investigation. The insurers also hired the law firm Cummins, White, Briedenbach & Alphson ("Cummins") to represent them. Defendant Donald Ricketts ("Ricketts"), an attorney-employee of Cummins, handled the representation.

The non-insurance company defendants Brown, Busching, Cummins, and Ricketts demurred to the plaintiff's cause of action for tortious bad faith and it was sustained by the trial court. The Supreme Court affirmed the trial court's order, holding that: "Obviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing." *Id*. at 576. See also, *Applied Equipment Corp. v. Litton Saudi Arabia Limited*, 7 Cal. 4th 503, 511-512 (1994)("We declined to impose liability on the adjusting firm and its employee for tortious breach of the covenant of good faith and fair dealing. In explaining our decision, we relied on two independent principles: (1) the non-insurer defendants were not parties to the agreements for insurance; therefore, they were not, as such, subject to an implied duty of good faith and fair dealing (Internal Quotes Omitted).") *Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 45 (1989)("Obviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an

1  implied duty of good faith and fair dealing."); *Rude v. Nelson's Marine, Inc.*, 2004 U.S. Dist.
2  LEXIS 24870, at *6 (N.D. Cal. 2004).

3  Ms. Black's claim for relief for tortious bad faith fails as a matter of law because there is no
4  insurance policy and Cigna is not a party to the self-funded Trust that provides the benefits in this
5  action. The fact that *Gruenberg v. Aetna Ins. Co* addressed independent adjustors or attorneys, and
6  not a third party administrator, is inconsequential because the salient point is that individuals or
7  entities, including third party administrators, who are not a party to the insurance policy cannot be
8  sued for tortious bad faith. Accordingly, Ms. Black's second claim for relief for tortious bad faith
9  must be dismissed with prejudice.

10  **2.    The Cases Relied on by Ms. Black Apply a Factual Circumstances Test and
11         Impose a Duty of Good Faith on Parties who are Not Parties to a Contract**

12  Ms. Black relies heavily on the 10th Circuit's opinion in *Wolf v. Prudential Insurance*
13  *Company of America*, 50 F.3d. 793 (1995)("*Wolf*"). There, the Annuity Board provided a self-
14  funded medical plan. Under the stop-loss provision of its agreements with the Board, when losses
15  reached a certain level, Prudential shared the risk with the Board; when losses got even higher,
16  Prudential underwrote the entire risk. "This profit and loss sharing arrangement was described as a
17  'risk sharing and cost arrangement ... which will provide for an increased liability to Prudential if
18  the loss development is adverse." *Id* at 798. Prudential was reinsuring the Board.

19  Relying generally on the Oklahoma Supreme Court's opinion in *Christian v. American*
20  *Home Assurance Co.*, 577 P.2d 899, 902-04 (Okla. 1978), and concluding that *Gruenberg v. Aetna*
21  *Insurance Co.*, supra 9 Cal. 3d at 566 was not "necessarily dispositive of the issue," the 10th Circuit
22  held that: "We believe the analysis should focus more on the factual question of whether the
23  administrator acts like an insurer such that there is a 'special relationship' between the
24  administrator and insured that could give rise to a duty of good faith." *Id* at 797. The Court found
25  that "a plan administrator in Prudential's situation could be subject to the duty of good faith."

26  The court in *Wolf* relied generally on *Christian v. American Home Assurance Co.*, supra,
27  577 P.2d at 899. Ms. Black argues that *Christian v. American Home Assurance Co*, supra, relies on
28  California cases concerning the special relationship between the insured and the insurer. However,

1  the court in *Christian v. American Home Assurance Co*, supra, did not hold that the tortious

2  covenant of good faith and fair dealing can arise out of factual circumstances that are independent

3  of a contractual relationship.  The court in *Christian v. American Home Assurance Co* simply

4  recognized a claim for relief for tortious bad faith against an insurance company, holding that:

5  "We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good

6  faith with its insured and that the violation of this duty gives rise to an action in tort for which

7  consequential and, in a proper case, punitive, damages may be sought.  *Id.* at P24.

8  　　　In another case cited by Ms. Black, *Wathor v. Mutual Assurance Administrators, Inc.,* 2004

9  OK 2 (2004), the Oklahoma Supreme Court affirmed the trial court's grant of summary judgment

10 on Wathor's claim for bad faith against third party administrator Mutual Assurance Administrators,

11 Inc. (MAA).  The court held that Wathor's claim did not come within the specific factual

12 parameters set forth in *Wolf*. This included the fact that MAA "did not share the risk of loss with

13 the Plan if losses increased to a certain level, and did not underwrite the entire risk if losses got

14 even higher.  *Id.* at *13

15 　　　Finally, Ms. Black relies on the Colorado Supreme Court's opinion in *Cary v. United of*

16 *Omaha Life Insurance Company*, 68 P.3d 462, 2003 Colo. LEXIS 331 (2003) ("*Cary*").  There, the

17 Court adopted the same analysis as the Court in *Wolf*, holding that "a special relationship existed

18 between the administrators and the insured sufficient to establish in the administrator a duty to act

19 in good faith."  *Id*. at 463.  This Court, like the Court in *Wolf*, concluded that when the actions of a

20 defendant are similar enough to those typically performed by an insurance company in claim

21 administration and disposition, there exists a special relationship sufficient for imposition of a duty

22 of good faith and tort liability for its breach even when there is no contractual privity between the

23 defendant and the plaintiff.  *Id*. at 466.

24 　　　**3.   The Cases Relied on by Ms. Black are Contrary to California Law which
         Limits the Duty of Good Faith and Fair Dealing to Parties to a Contract**
25

26 　　　Ms. Black's reliance on *Wolf* and *Cary* is misplaced because they are contrary to California

27 law.  Under California law, the duty of good faith and fair dealing does not arise out of a "special

28 relationship" between the administrator and the insured that is based on a factual analysis. Unlike

*Wolf* and *Cary*, the duty is not created by the actions of a defendant that are similar enough to those typically performed by an insurance company.

Under California law, the duty of good faith and fair dealing is an implied contractual term that is contained in every contract regardless of the factual circumstances and is not dependent on factual circumstance. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995) (In sum, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement."); *Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999) ("By now it is well established that a covenant of good faith and fair dealing is implicit in every contract. (Cites Omitted)."); *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."); *Scott v. Pacific Gas & Electric Co.*, 11 Cal. 4th 454, 462 (1995); *Carma Developers (Cal.), Inc. v. Marathon Development California*, 2 Cal. 4th 342, 372 (1992); *Gruenberg v. Aetna Ins. Co.*, supra, 9 Cal. 3d at 575 ("It is manifest that a common legal principle underlies all of the foregoing decisions; namely, that in every insurance contract there is an implied covenant of good faith and fair dealing.").

The courts in *Wolf* and *Cary* imposed a duty of good faith on third parties who were not parties to an insurance contract. This is contrary to California law as a claim for tortious bad faith cannot be maintained independent of an insurance policy. The California Supreme Court in *Waller v. Truck Ins. Exchange, Inc.*, supra, 11 Cal. 4th at 36 held that "[a]bsent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." *See also, Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 350 (2000) ("The covenant thus cannot be endowed with an existence independent of its contractual underpinnings (cite omitted). It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement"); *San Miguel Community Assn. v. State Farm General Ins. Co.*, 220 Cal. App. 4th 798, 812 (2013); *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136. Under California law, the covenant of good faith must arise as a contractual right and, contrary to *Wolf* and *Cary*, cannot

exist based on factual circumstances that are independent of the contractual underpinnings.

The contractual underpinning for a claim for relief for tortious bad faith, Ms. Black's second claim for relief, is an insurance policy.  The breach of the implied covenant of good faith and fair dealing gives rise to remedies in tort only if the contract involved is an insurance policy. *Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43-44 (1999) ("Because the covenant of good faith and fair dealing essentially is a contract term that aims to effectuate the contractual intentions of the parties, compensation for its breach has almost always been limited to contract rather than tort remedies. (Cites & Internal Quotes Omitted.)  At present, this court recognizes only one exception to that general rule:  tort remedies are available for a breach of the covenant in cases involving insurance policies."); *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1180-1181 (1993) ("An exception developed in the context of insurance contracts. In that setting, a variety of policy reasons have led courts to conclude that breach of the implied covenant provides a basis for an action in tort."); *Foley v. Interactive Data Corp.*, supra, 47 Cal. 3d at 684 ("An exception to this general rule has developed in the context of insurance contracts where, for a variety of policy reasons, courts have held that breach of the implied covenant will provide the basis for an action in tort.  California has a well-developed judicial history addressing this exception.")

As a matter of law, in California, the claim for relief for tortious bad faith arises out of an insurance policy and can be brought only against an insurer.  California law does not extend the claim for tortious bad faith to instances in which a third party administrator, administering the Medical Trust's plans, allegedly performs functions of an insurer.  Accordingly, defendants' motion to dismiss Ms. Black's second claim for relief for tortious bad faith should be granted.

**4.     A Self-Funded Plan is Not Insurance Under California Law**

The Courts in *Wolf v. Prudential* and *Cary v. United of Omaha Life Insurance Company* dealt with self-funded plans and assumed that these plans constituted insurance policies without any discussion or analysis of the issue.

Under California law, a self-funded plan is not insurance.  Insurance Code § 22; *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 72 (1997)(fn. 20) ("In a strict sense, 'self-insurance' is a 'misnomer.')  Insurance is a contract whereby one undertakes to indemnify

another against loss, damage, or liability arising from a contingent or unknown event. (Ins. Code, § 22.)  Self-insurance is equivalent to no insurance.  As such, it is repugnant to the very concept of insurance.  If insurance requires an undertaking by one to indemnify another, it cannot be satisfied by a self-contradictory undertaking by one to indemnify oneself (Internal Quotes & Cites Omitted)."); *Richardson v. Gab Business Servs.*, 161 Cal. App. 3d 519, 523 (1984) ("The allegation of self-insurance, which is equivalent to no insurance, is repugnant to the concept of insurance which fundamentally involves the shifting to a third party, by contract, for a consideration, the risk of loss as a result of an incident or event."); *Truck Ins. Exchange v. Amoco Corp.*, 35 Cal. App. 4th 814, 823 (1995) ("An entity that self-insures is not an insurer within the meaning of Insurance Code sections 22 and 23.  A self-insurer enters into no contract to indemnify another.")

The Complaint establishes that the Medical Trust is not an insurance company or an insurance policy.  Exhibit A to the Complaint states that:  "Health benefits are self-funded by the Medical Trust from accumulated assets and are provided directly from the Episcopal Church Clergy and Employees' Trust."  *Id.* at p. 88.

The Complaint also establishes that the benefit plans maintained by the Medical Trust are not insurance policies. Exhibit A to the Complaint states that "[t]he benefit plans maintained by the Medical Trust are intended to qualify as "church plans" within the meaning of Section 414(e) of the Internal Revenue Code.  Exhibit A, Introduction.  Under Internal Revenue Code Section 414(e)(1), a "church plan" means a "plan established and maintained (to the extent required in paragraph (2)(B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501.

Exhibit A to the Complaint further states that:

> The Medical Trust funds certain of its benefit plans through a trust fund, the Episcopal Church Clergy and Employees' Benefit Trust ("ECCEBT") that is intended to qualify as a voluntary employees' beneficiary association (VEBA) under Section 501(c)(9) of the Internal Revenue Code.  The purpose of the ECCEBT is to provide

benefits to eligible employees, former employees, and/or their dependents in the event of illness or expenses for various types of medical care and treatment.

A VEBA is not an insurance company. 26 CFR 1.501(c)(9)-1. It is an organization that "provides for the payment of life, sick, accident, or other benefits to its members or their dependents or designated beneficiaries, and substantially all of its operations are in furtherance of providing such benefits." *Id* at 1.501(c)(9)-1(c). There simply is no claim for benefits under an insurance policy in this action.

### IV. CONCLUSION & MS. BLACK'S REQUEST FOR LEAVE TO AMEND

Ms. Black's second claim for relief for tortious bad faith must be dismissed with prejudice. Under California law, a claim for relief for tortious bad faith arises only from an insurance policy. Since benefits under an insurance policy are not part of this action, Ms. Black's complaint cannot be cured so leave to amend is not appropriate. *Griggs v. Pace Am. Group, Inc*., 170 F.3d 877, 879 (9th Cir. 1999)("Yet, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.")

DATED: March 25, 2015

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Sean P. Nalty
Sean P. Nalty
Attorneys for Defendants THE CHURCH PENSION GROUP SERVICES CORPORATION doing business as THE EPISCOPAL CHURCH MEDICAL TRUST; CIGNA BEHAVIORAL HEALTH, INC.